Lee Johns v. Commissioner.
Johns v. Commissioner
Docket No. 15466.
United States Tax Court
1948 Tax Ct. Memo LEXIS 80; 7 T.C.M. (CCH) 711; T.C.M. (RIA) 48201; September 30, 1948
*80 On the evidence, held, petitioner has failed to establish that the used car business conducted in the taxable year 1943 was not his individual business, and the respondent's determination that all the net income therefrom was taxable to him as sole proprietor is sustained. Douglas D. Felix, Esq., du Pont Bldg., Miami, Fla., for the petitioner. Newman A. Townsend, Jr., Esq., for the respondent. LEECH Memorandum Findings of Fact and Opinion LEECH, Judge: This proceeding involves a deficiency in income tax for the calendar year 1943 in the amount of $16,918.84. This deficiency is based on adjustments made by the respondent for both the years 1942 and 1943 and includes the unforgiven portion of the 1942 assessment. The sole contested issue is whether a bona fide partnership for income tax purposes existed between petitioner, Lee Johns, and his wife, Ruby Johns, during the year 1943. Findings of Fact Petitioner is an individual and during the year 1943 resided at Miami, Florida. His income tax return for that period was filed on a cash basis with the collector of internal revenue for the district of Florida. Petitioner and Ruby Johns were married at Orlando, *81 Florida, in 1915. From that time, or shortly thereafter, until about 1919, petitioner worked for others as an automobile mechanic in Jacksonville, Florida, later in Tifton, Georgia, and then in Atlanta, Georgia. In 1919, they moved to Miami, Florida, where a business of buying and selling used cars was started. This business was discontinued and a charter boat business was undertaken. Sometime later the charter boats were sold and they went to New York for the purpose of marketing petitioners' invention known as "Johns' Internal Showers". On December 21, 1932 petitioner and his wife filed a certificate of conducting business under the assumed name of "Johns' Internal Showers Company", representing that both were participants in the business. This venture proved to be unprofitable. In 1933, Mrs. Johns pawned some diamonds to finance the trip back to Miami, Florida. About June 1933, petitioner and his wife secured a loan of $40 from the Fatt Finance Company, and with $40 left from the money raised by pawning the jewelry, a fire-damaged automobile was purchased for $80. Both petitioner and Mrs. Johns worked on reconditioning the car which was later sold. From subsequent purchases and *82 resales of used cars, the business in controversy grew. The business at first was conducted under the name of Lee Johns Motor Company. On September 26, 1935, a bank account was opened under that name at the First National Bank of Miami. Both petitioner and Mrs. Johns were authorized to draw against that account. A letterhead used at that time bore the name "Lee Johns Motor Co." with the name "Lee Johns, President" appearing in the upper left hand corner and the name "Ruby Johns, Secy.-Treas." in the upper right hand corner. In 1940 the name of the business was changed to "Lee Johns Motors". The old bank account was closed and a new account opened with the same bank under the new name. Only the petitioner was authorized to sign checks on this new account, which continued active throughout 1943 and thereafter. A new letterhead was used bearing the name "Lee Johns Motors" with the name "Lee Johns" appearing in the upper left hand corner and the name "Ruby Johns" in the upper right hand corner. Petitioner and Mrs. Johns lived in a house which was located on the lot where the business was conducted. An office was attached to the house. Both petitioner and Mrs. Johns devoted their full *83 time to the business. Petitioner appraised the cars purchased, determined upon the necessary repairs and fixed the price at which they were to be resold. During 1942 and 1943, six or seven salesmen worked under his supervision. Mrs. Johns attended to the office work. She kept the accounts, accepted collections, made the deposits, filled out the necessary forms for the finance companies, made out the necessary O.P.A. and employer's tax returns, and supervised the office help. She also looked after repossessing cars when there was a default in payments. On two or three occasions she made out-of-town trips. Occasionally, but not often, in the absence of petitioner, she made appraisals or purchased cars, and also made a few sales. During 1942 and 1943, a girl was employed to assist Mrs. Johns with the office work. She performed such duties as were assigned her by Mrs. Johns. Between 1933 and 1941, many of the cars purchased and sold were financed through Fatt Finance Company. The financing was oral at first but later a written agreement was executed. Subsequently, a second written agreement was executed. This agreement described the parties of the second part as "Lee Johns and Ruby *84 Johns, his wife, trading and doing business as the Lee Johns Motors". Fatt Finance Company was liquidated in 1941. The business carried workmen's compensation insurance under the name "Lee Johns and Mrs. Lee Johns, doing business as Lee Johns Motor Co." On June 8, 1936, and intangible profits tax return was filed with the State of Florida, upon which it was represented that Lee Johns Motor Company was a partnership composed of Lee Johns and Ruby Johns. On a number of occasions between 1940 and 1943, Mrs. Johns signed conditional sales contracts, a receipt for a car, Office of Price Administration forms and Florida Industrial Commission reports on behalf of Lee Johns Motor Company or Lee Johns Motors by "Ruby Johns, Partner". Between 1939 and 1943, all social security tax returns were filed on behalf of Lee Johns Motor Company and Lee Johns Motors by petitioner. These returns were signed by petitioner and were notarized by Mrs. Johns. On many of these returns the word "owner" appeared after the signature. The word "owner" was either typed in by Mrs. Johns or was in her handwriting. On the returns filed in July and October 1943, the word "partner" appeared after the signature of petitioner. *85 On the July 1943 return, the word "owner" was in the handwriting of Mrs. Johns and on the October 1943 return, the word "partner" was typed in by Mrs. Johns. The books of account were kept by Mrs. Johns and consisted solely of a cash journal. There was no capital account. In the cash journal there was a column headed "Lee Johns" under which withdrawals from the business were recorded. The withdrawals for household and other living expenses were entered under this column. There was no column headed "Ruby Johns". From 1938 to 1943, inclusive, the realized profits and losses of the business were as follows: Year
Net Profit
Net Loss
1938
$ 3,307.13
1939
7,246.25
1940
$ 594.06
1941
5,663.97
1942
5,101.18
1943
45,128.94 *
For the years 1938 and 1939, petitioner and Mrs. Johns filed joint returns, upon which the used car business operations were reported. These returns were prepared by George J. Ramsay, a certified public accountant, from information furnished by Mrs. Johns. For the years 1940, 1941 and 1942, the business income was disclosed upon the *86 income tax returns of the petitioner. These returns were prepared by Selden & Penney, certified public accountants, from work sheets supplied by Mrs. Johns, without audit. Petitioner and Mrs. Johns filed separate individual tax returns for the year 1943. These returns were prepared by L. A. Grace. During the preparation, Grace consulted with Charles Marks, a certified public accountant. Marks advised Grace to check the records and see if it had been a partnership in the past and, if it was, to file a partnership return; if not, to allow a reasonable compensation for Mrs. John's services and file individual returns. Grace prepared the separate individual returns, which petitioner and Mrs. Johns signed and filed. Petitioner reported the operations of Lee Johns Motors for that year, the return disclosing a net business profit of $23,578.53. His occupation was represented to be "Used Car Dealer". Mrs. Johns, on her 1943 return, returned gross income of $5,200 as salary from Lee Johns Motors. Her occupation was represented as "Office Manager" and her employer as "Lee Johns Motors, Miami, Florida". During 1943 funds were withdrawn to pay the sum of $6,338.86 upon a joint declaration of *87 estimated tax filed by petitioner and Mrs. Johns. Petitioner claimed the entire amount of $6,338.86 as an offset against the tax shown to be due on his individual 1943 return. In 1946 an Internal Revenue Agent instituted an investigation and audit of petitioner's 1943 tax return. At the suggestion of Grace, Marks was employed to represent petitioner and Mrs. Johns during the investigation. He was instructed to take whatever steps were necessary to see that the business income was correctly stated and reported. After an examination of the records he concluded that a partnership return should have been filed for 1943. Accordingly, he prepared a partnership and an amended return for Mrs. Johns, which were filed on or about May 19, 1947. In addition he prepared an amended joint return for petitioner and Mrs. Johns, covering the year 1942, which was filed at the same time. The notice of deficiency herein was mailed to petitioner on May 15, 1947. The 1943 partnership return prepared by Marks was captioned "Lee Johns and Ruby Johns, DBA Lee Johns Motors". It disclosed a net income of $50,328.94, which was allocated equally between petitioner and Mrs. Johns. It stated that the business *88 was a partnership organized in 1943. Upon the basis of data recorded in the cash journal, and information obtained from other sources, Marks constructed a ledger, covering the year 1943, showing capital and drawing accounts for petitioner and Mrs. Johns. The credit entries in such capital accounts were arrived at by dividing the net worth of the business equally. Adjustments to equalize the balances in the drawing accounts were made on the same basis. Petitioner and Mrs. Johns had no written partnership agreement prior to or during the taxable year 1943. The trade name "Lee Johns Motor Co." or "Lee Johns Motors" was not registered under the Fictitious Names statute. Opinion The issue presented is whether a bona fide partnership for income tax purposes existed between petitioner and his wife during the taxable year 1943. This issue is one of fact to be resolved in the light of the principles set for in . There was no written partnership agreement. The record establishes that the only oral agreement between petitioner and his wife was an understanding had at the time they were married in 1915 that everything was to be "fifty-fifty. *89 " The absence of any written agreement or the existence of any oral agreement with respect to the particular business in question places the burden upon petitioner to show that the parties by their acts and conduct really intended to conduct the business under a bona fide partnership arrangement. On the evidence, has petitioner met his burden of establishing that fact? The record discloses that the used car business was commenced about the middle of 1933, with a capital of $80. Of this sum, $40 was borrowed from a finance company and the remaining $40 consisted of the balance of moneys raised by pawning some of Mrs. John's jewels. With this $80 a used car was purchased, reconditioned and sold. With the proceeds other used cars were purchased and sold. Prior to 1943, the business returned modest profits in some years and in other years losses resulted. In the taxable year 1943, owing to favorable market conditions, the net proceeds realized were in excess of $50,000. The business was located on the premises occupied by petitioner and his wife as their residence. Both devoted their full time to the business. Petitioner, who had been employed as an automobile mechanic for a number of years *90 prior to 1933, managed the business. He determined what cars were to be purchased, fixed the price to be paid therefor, attended to the necessary reconditioning and fixed the prices at which the cars were to be resold. Mrs. Johns attended to all the office routine. She kept the books, made collections and deposits, arranged for refinancing, the repossession of cars when defaults in payments occurred and prepared all the necessary reports, except income tax returns. While the services performed by Mrs. Johns could have been entrusted to employees, we think they may be properly characterized as vital to the conduct of such business. The record, however, also discloses many facts and circumstances clearly indicating the parties themselves did not regard the business as being other than the individual business of petitioner. The books kept by Mrs. Johns contained no capital accounts. In the cash ledger there appears an account captioned "Lee Johns", under which were recorded all the amounts withdrawn for the purpose of the business and for the personal living expenses of petitioner and Mrs. Johns. The business was originally conducted under the trade name "Lee Johns Motor Company". The *91 bank account was carried in that name and both petitioner and his wife were authorized to draw thereon. It does not appear that Mrs. Johns ever drew against that account. In 1940 the trade name was changed to "Lee Johns Motors" and the bank account was likewise changed. Mrs. Johns was not authorized to draw against such account. At no time prior to or during the taxable year 1943 did the parties comply with the Florida Fictitious Names statute by registering thereunder. Nor does it appear that Mrs. Johns was empowered to trade as a feme sole. Mere violations of the state law would not be controlling as to whether there existed a bona fide partnership for Federal income tax purposes, but such conduct has a bearing on the question of intent of the parties. The manner in which the income from such business was reported for tax purposes has an important bearing on the question of intent. We think it unnecesary to repeat here the facts revealed by the various income tax returns, which are fully set forth in our findings of fact. We regard the original returns as truly reflecting the situation as the parties understood it to be, i.e., that petitioner owned the business and that Mrs. Johns *92 was an employee. We are not impressed with Mrs. Johns's explanation that she and petitioner had no knowledge as to how the income from the business should be returned for tax purposes. Mrs. Johns supplied all the data from which the original tax returns were prepared. She kept the books and prepared all the other necesary forms and reports. She appeared to be a competent, astute and careful business woman and her testimony respecting this important phase of the business was not convincing. The filing of a partnership return by the accountant, Marks, in 1947, after the Bureau of Internal Revenue commenced its examination and audit of petitioner's individual return for 1943, has no bearing on the question as to whether petitioner and Mrs. Johns really intended to conduct such business as bona fide partners. Nor do we regard it as very material that certain of the net earnings of the business were subsequently invested in property which was taken in the names of petitioner and Mrs. Johns. We have no doubt they had a general oral understanding that the surplus earnings of petitioner, from whatever source, would eventually be invested for their joint benefit. Such an understanding does *93 not indicate the existence of a bona fide partnership relationship. The investment of a small amount of capital and the rendition of services by the wife are not inconsistent with the conduct of a business by the husband as a sole proprietorship. On this record, we conclude that petitioner has not established that the used car business conducted in the taxable year 1943 was a bona fide partnership and recognizable as such for income tax purposes. The respondent's determination that the net income from such business was taxable to the petitioner as sole proprietor is sustained. Decision will be entered for the respondent. Footnotes
*. The net profit without the allowance of $5,200 as salary for Mrs. Johns was $50,328.94.↩